UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL GEORGE MANCILLA,<br><br>            Petitioner,<br><br>     v.<br><br>ACTING WARDEN, High Desert State Prison,<br><br>            Respondent. | No. 1:13-cv-00399-LJO-SKO  HC<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner, a state prisoner represented by counsel and proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, raises six grounds for habeas relief: (1) the California Court of Appeals violated his rights to equal protection and appellate due process by failing to include in its opinion a statement of facts as required by the California Constitution; (2-5) four jury instruction errors violated Petitioner's right to due process; and (6) evidence of Petitioner's possession of ammunition unrelated to Petitioner's shooting of the victim violated Petitioner's right to due process.  The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Following consideration of the record as a whole and applicable law, the undersigned recommends that the Court deny the petition for writ of habeas corpus.

1

I. **Factual Background**[1]

On September 26, 2008, Petitioner shot and killed Victor Reyna Cedano, the boyfriend of Johanna Lopez. Lopez was Petitioner's former live-in girlfriend and the mother of his two young children. Petitioner did not dispute that he fired the bullet that killed Cedano.

By way of background, on the morning of September 26, 2008, Petitioner picked up the two children from Lopez's home and agreed to return them at 5:00 p.m. the same day. Early in the afternoon, he took the children to the Chuck E. Cheese Restaurant in a shopping center near Lopez's home to play games. Having limited money, they stayed for a little more than an hour and left the restaurant at about 3:00 p.m. Petitioner put the children in car seats in the back seat.

At about 3:00 p.m., Lopez walked from her home to the same shopping center, where she met Cedano as he left his job at Ross. They hugged and got into Cedano's car. As Cedano began to drive, Petitioner backed out of his parking stall and blocked Cedano's car. Petitioner asked Lopez to go home. She refused. Both men got out of their vehicles and began shouting about fighting each other. Lopez convinced Cedano to get back into his car, and Lopez and Cedano attempted to leave. But when Cedano moved his car, Petitioner moved his car, too, again blocking Cedano's way. When the men left their vehicles and resumed shouting, Lopez removed the children from Petitioner's vehicle and told the men, "Not in front of the kids."

Petitioner walked to the other side of his vehicle,[2] racked a round into his handgun, then returned and got back into the driver's seat. From outside the open driver's window, Cedano swung at Petitioner several times. Petitioner stuck his arm out the window and fired the handgun. Cedano grabbed his side and fell to the ground.

---

[1] The factual background is substantially derived from facts set forth in *People v. Mancilla* (Cal.App. Jan. 19, 2012, modified Feb. 16, 2012) (No. F061065). In the appellate court's written decision, "[t]he discussion sets forth the facts, issue by issue, as relevant." *See* "Modification of Opinion on Denial of Rehearing [No change in Judgment]," *Id.* at 2. The Court has supplemented the state court's findings when necessary for clarity.

[2] Petitioner was out of the sight of Lopez and Cedano, who remained on the driver's side of Petitioner's vehicle, but was in full view of witnesses watching from the restaurant's front windows.

Petitioner drove to another shopping center and called his parents. He turned himself in to police that evening.

## II. Procedural Background

On December 16, 2008, the Fresno County district attorney charged Petitioner with murder (Cal. Criminal Code § 187(a)), personal firearm use (Cal. Criminal Code § 12022.53(a)), personal and intentional discharge of a firearm (Cal. Criminal Code § 12022.53(c)), and personal and intentional discharge of a firearm causing great bodily injury or death (Cal. Criminal Code § 12022.53(d)). On March 12, 2010, a jury found Petitioner guilty of first degree murder and found all three firearms allegations true.

Petitioner retained a new attorney and moved for a new trial. On September 22, 2010, the trial court denied the new trial motion. Petitioner was sentenced to an indeterminate term of 25 years to life for first degree murder (Cal. Criminal Code § 190(a)) and a consecutive indeterminate term of 25 years to life for personal and intentional discharge of a firearm causing great bodily injury or death (Cal. Criminal Code § 12022.53(d)).

Petitioner filed a timely direct appeal to the California Court of Appeals. On January 20, 2012, the appellate court affirmed the conviction but remanded for sentence modification. Petitioner moved for rehearing, alleging four omissions including his claim that the Court of Appeals violated California state law by failing to include a separate statement of facts. On February 16, 2012, the Court of Appeals modified its opinion without changing its determination to affirm Petitioner's conviction. The California Supreme Court denied review on April 11, 2012.

Petitioner filed a federal petition for writ of habeas corpus on March 18, 2013.

## III. Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United

States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997).  Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings.  *Id.*  Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States."  *Lockyer*, 538 U.S. at 71.  To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision.  *Id.*  The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  *Id.* at 72.  The state court need not have cited

clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### IV.     Missing Statement of Facts

Petitioner contends that the Court of Appeal's failure to include a separate statement of facts in its opinion violated his right to equal protection as expressed in *Douglas v. California* (372 U.S. 353 (1962)) and to due process as expressed in *Corcoran v. Levenhagen* (558 U.S. 1 (2009)). He adds that the California Constitution, Article VI § 14, requires that "[d]ecisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." Respondent counters that none of the authority on which Petitioner relies establishes that clearly established federal law requires a state appellate court to include a separate statement of facts in a written opinion lest the defendant's equal protection and due process rights be violated. The undersigned agrees with Respondent.

5

Petitioner first raised this issue in his motion for rehearing following the Court of Appeal's first decision. The Court of Appeals responded by modifying the decision to state, in pertinent part, "The discussion sets out the facts, issue by issue, as relevant." Lodged Doc. 15.

The case law on which Petitioner relies is inapposite. In *Douglas*, the Supreme Court held that indigent defendants were denied equal protection of the law when the merits of their appeal were decided without the benefit of counsel. The *Douglas* decision does not refer to the contents of a written decision, in general, or the inclusion of a separate statement of facts, in particular. In *Corcoran*, the Court held that due process was violated when the lower courts did not address all of the petitioner's claims, but again, the decision included no reference regarding the inclusion of a separate statement of facts in a written decision.

Petitioner also attempts to use the presumption of correctness to bootstrap his claim that federal law requires a separate statement of facts. That federal review accords a presumption of correctness to state court opinions is not tantamount to a requirement of a separate factual statement. That a federal court may presume the correctness of facts set forth in the context of analyzing each substantive claim, as the California court did here, is apparent.

In short, Petitioner has provided no established federal law requiring state courts to include a separate statement of facts in their written decisions, and this Court's research has discovered no such law. That California may require a separate statement of facts in some unrelated situations is immaterial. "Federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*citations omitted*). The Court should not grant habeas relief based on the state court's determination not to provide a separate statement of facts.

**V.     Jury Instructions**

In claims 2, 3, 4, and 5, Petitioner contends that he was denied due process by multiple

6

errors in the jury instructions.  In each instance, the state Court of Appeals determined that Petitioner had forfeited his right to raise the instructional error on appeal.  The undersigned finds that each instruction claim is procedurally barred by petitioner's failure to object before the trial court.

### A. Standard for Review of Jury Instruction Error

Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review.  "It is not the province of a federal court to reexamine state court determinations of state law questions."  *Estelle*, 502 U.S. at 71-72.  "The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief."  *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006).

To prevail in a collateral attack on state court jury instructions, a petitioner must do more that prove that the instruction was erroneous.  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  Instead, the petitioner must prove that the improper instruction "by itself so infected the entire trial that the resulting conviction violated due process."  *Estelle*, 502 U.S. at 72.  Even if there were constitutional error, habeas relief cannot be granted absent a "substantial and injurious effect" on the verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

A federal court's review of a claim of instructional error is highly deferential.  *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993).  A reviewing court may not judge the instruction in isolation, but must consider the context of the entire record and of the instructions as a whole.  *Id.*  The mere possibility of a different verdict is too speculative to justify a finding of constitutional error.  *Henderson*, 431 U.S. at 157.

Even when the trial court has made an error in the instruction, a habeas petitioner is only entitled to relief if the error "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750,

7

776 (1946)).  A state prisoner is not entitled to federal habeas relief unless the instructional error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637.  If the court is convinced that the error did not influence the jury, or had little effect, the judgment should stand.  *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995).

### B. Mutual Combat

In his second claim, Petitioner contends that the trial court erred in giving an instruction on mutual combat (CALCRIM 3471).  He claims prejudice since the instruction indicated that there was no right to self-defense simply because there was an altercation in which neither combatant backed down.

#### 1. Proceedings Before Trial Court

Both Petitioner and the prosecutor requested administration of CALCRIM 3471 (2008).  CT 227; CT 232.  Following several informal discussions about instructions between the Court and counsel during the course of the trial, the Court convened a charge conference prior to closing arguments on March 11, 2010.  Neither counsel objected to the Court's proposed instructions.

#### 2. Mutual Combat Instruction

The trial court gave the following instruction:

> A person who engages in mutual combat or who is the initial aggressor has a right to self-defense only if one, he actually and in good faith tries to stop fighting; and two, he indicates by word or conduct to his opponent in a way that a reasonable person would understand that he wants to stop fighting and that he has stopped fighting; and three, he gives his opponent a chance to stop fighting. If a person meets these requirements he then has a right to self-defense if the opponent continues to fight.
>
> A fight is mutual combat when it began or continued by mutual consent or agreement.  That agreement may be expressly stated or implied and must occur before the claim of self-defense arose.  If you decide that the defendant started the fight using non deadly force and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the

>   defendant had the right to defend himself with deadly force and was
>   not required to try to stop fighting.

RT 882-RT 883.

### 3.     State Court Opinion

In his direct appeal, Petitioner argued, as he does before this Court, that giving the mutual combat instruction "shifted the burden of proof in violation of due process by impairing his defenses of self-defense and imperfect self-defense." Lodged Doc. 12 at 5.  The Attorney General argued that by requesting CALCRIM 3471, stating that he had no objections to the jury instructions, and offering no instructions that were rejected by the trial court, Petitioner forfeited his right to appellate review.

Initially, the court of appeals observed that a defendant generally cannot appeal an instruction that is legally correct and responsive to the evidence unless he has requested appropriate clarifying or amplifying language.   Because a defendant can appeal an instruction that incorrectly stated the law or affected the defendant's substantial rights, however, the court was required to perform sufficient substantive analysis to determine whether the defendant correctly asserted error and if error was found, whether it prejudiced the defendant.

Turning to the parties' arguments, the court agreed with the Attorney General that the instruction did not apply to Petitioner's self-defense claim and that the record was sufficient to support a jury finding of mutual combat between Petitioner and Cedano.  Citing California law, the court held that mutual combat does not arise from the fighting itself but from the preexisting intent to engage in it.  Mutual combat requires a reciprocal exchange of blows pursuant to mutual intention, consent, or agreement before the fight ensues.  "[O]ne who *voluntarily engages* in mutual combat with another must have endeavored to withdraw therefrom before he can be justified in killing his adversary to save his life." *See* Lodged Doc. 12 at 7 (court's citations and quotations omitted).

Concluding that the mutual combat instruction correctly stated the law in view of the evidence adduced at trial, that the claimed error did not prejudice Petitioner or affect Petitioner's substantial rights, and that Petitioner did not request different language, the state court held that

Petitioner forfeited his claim that the instruction should have been modified. It added, "[B]ecause the instruction does not otherwise violate his constitutional rights, his claim also fails on the merits." Lodged Doc. 12 at 7.

### 4. Analysis

Petitioner argues that the Court can address this issue in a federal habeas petition since "[t]he California Court of Appeal did not treat this issue as forfeited, but proceeded to discuss the merits insofar as [Petitioner's] substantial rights were affected." Doc. 1-1 at 21. As summarized above, the state court acknowledged that Petitioner had not only failed to object to the instruction at trial, he had requested it. As a result, the court initially had to perform a substantive analysis to determine whether it could reach Petitioner's claim because a defendant can appeal an instruction that incorrectly states the law or affects the defendant's substantial rights. As a result of that analysis, the state court determined that Petitioner had forfeited the claim that the instruction should have been modified.

When a state prisoner has defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). An adequate rule is one that is "firmly established and regularly followed." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003). An independent rule is one that is not "interwoven with federal law." *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). Because the state court concluded that Petitioner had forfeited his claim by failing to object to the instruction before the trial court, the Court cannot reach this claim in federal habeas unless the instructional error resulted in a fundamental miscarriage of justice.

The trial court's administering the mutual combat instruction did not result in a miscarriage of justice in this case. Although Petitioner argues that a fact finder could have interpreted the evidence and testimony to conclude that the interaction between Petitioner and

10

Cedano was not mutual combat under California law, the state court concluded that other evidence would have supported a finding of mutual combat.[3]

In the absence of a fundamental miscarriage of justice, the Court should not reach this claim, which the state court deemed to have been forfeited.

### C. Provocation of a Fight

As his third ground for habeas relief, Petitioner contends that his due process rights were violated by the trial court's instructing the jury on provocation of a fight (CALCRIM 3472).

#### 1. Proceedings Before Trial Court

Both Petitioner and the prosecutor requested administration of CALCRIM 3471 (2008). CT 227; CT 232. Following several informal discussions about instructions between the Court and counsel during the course of the trial, the Court convened a charge conference prior to closing arguments on March 11, 2010. Neither counsel objected to the Court's proposed instructions.

#### 2. Provocation-of-Fight Instruction

The trial court gave the following instruction:

> A person does not have the right to self-defense if he provokes a fight or a quarrel with the intent to create an excuse to use force.

RT 883.

#### 3. State Court Opinion

The state court observed that defendant generally cannot appeal an instruction that is legally correct and responsive to the evidence unless he has requested appropriate clarifying or amplifying language. Thus, as it did with Petitioner's CALCRIM 3471 claim, the court analyzed the merits of the CALCRIM 3472 claim to the extent necessary to determine whether the asserted error would prejudice Petitioner.

In its analysis of the evidence, the court agreed with the Attorney General that the evidence could support a finding that Petitioner drove his vehicle recklessly and directly at the car in which Cedano and Lopez were travelling. As a result, the court concluded that the provocation

---

[3] The undersigned viewed the Chuck E. Cheese parking lot security tape that the trial court and jury saw multiple times. The video depicts a dispute between Petitioner and Cedano that escalates from a initial verbal interchange in which the parties are far enough apart to preclude physical contact but to permit a verbal exchange. This is consistent with trial testimony that the parties initially exchanged verbal threats.

instruction was a correct statement of the law responsive to the evidence, the claimed error did not result in prejudice, and the instruction did not affect Petitioner's substantive rights. The state court concluded that Petitioner forfeited his right to claim that the instruction should have been omitted or modified.

### 4. Analysis

Because the state court concluded that Petitioner had forfeited his claim by failing to object to the instruction before the trial court, the Court cannot reach this claim in federal habeas unless the instructional error resulted in a fundamental miscarriage of justice. As detailed in the factual background above, evidence in the record would have supported a conclusion that Petitioner was the initial aggressor, driving directly at Cedano's car.[4] The Court should not reach this claim.

### D. Omission of Instructions on Defense of Others and Imperfect Self-Defense

Petitioner contends that the trial court violated his right to due process in omitting instructions on defense of others and imperfect self-defense (CALCRIM 505 and 571) since the jury could have found that he was acting in defense of his minor children. Respondent responds that because the evidence established that the children were out of the car, the trial court appropriately omitted instructions regarding the defense of others.

### 1. Proceedings Before Trial Court

Both Petitioner and the prosecutor requested that the trial court include CALCRIM 505 and 571. CT 227 and 232. Following several informal discussions about instructions between the Court and counsel during the course of the trial, the Court convened a charge conference prior to closing arguments on March 11, 2010. Neither counsel objected to the Court's proposed instructions.

///

///

///

---

[4] The undersigned viewed the Chuck E. Cheese parking lot security tape that the trial court and jury saw multiple times. The video depicts Petitioner backing from a parking space into the path of Cedano's car and later advancing to block Cedano's car again as Cedano tries to drive away.

## 2. State Court Opinion

The Court of Appeal first analyzed the merits of Petitioner's arguments to determine whether his failure to object on the record constituted a forfeiture of this claim. The state court found:

> The testimony of Lopez, a bystander, a police officer, and [Petitioner] himself establish without contradiction that *after* Lopez took the children out of [Petitioner's] car Petitioner *then* walked away from the car, and he *then* racked a round into his handgun, and he *then* got back into his car, and Cedano *then* swung at [Petitioner], who was sitting by himself inside his car, and [Petitioner] *then* shot Cedano. "I shot to protect *myself*," he testified. "If he wouldn't have attacked *me* I wouldn't have shot." (Italics added.)

Lodged Doc. 12 at 11.

The court concluded that Petitioner had forfeited his claim that the instructions should have been modified.

## 3. Analysis

Again, the Court should not reach this claim, which Petitioner forfeited through his failure to object at trial. In his federal petition, Petitioner concedes that the videotape shows the children outside the car as the shooting occurs. As detailed in the factual background above, the evidence clearly established that the children were not in the car after Petitioner returned from loading his handgun and got into the driver's seat. In his testimony, Petitioner described in detail Lopez removing the children from the back seat after he got back into the car with the loaded handgun. Petitioner testified that Cedano was able to open the driver's door and begin swinging at him because Petitioner's attention had been diverted by his daughter in the back seat. Lopez and the children had moved to the front of Petitioner's car near Moore. Nonetheless, Petitioner criticizes the state court's written account of the facts and contends that a fact finder could have concluded that the children were still in a zone of danger.[5]

Because the state court concluded that Petitioner had forfeited his claim by failing to object to the instruction before the trial court, the Court cannot reach this claim in federal habeas

---

[5] The "zone of danger" argument, which Petitioner first articulated in the federal petition, is a risky strategy for Petitioner since the prosecution criticized Petitioner at trial for firing his gun at Cedano when the children were outside the car and within range of Petitioner's gun.

unless the instructional error resulted in a fundamental miscarriage of justice. As detailed in the factual background above, evidence in the record supported a conclusion that Petitioner was the initial aggressor, driving directly at Cedano's car.[6]

The state court's having concluded that Petitioner forfeited this claim, the Court should not consider it.

### E. Flight Instruction

In his fifth claim, Petitioner contends that the trial court violated his right to due process by giving the instruction that Petitioner's flight could be considered evidence of consciousness of guilt since Petitioner actually fled in fear. Respondent counters that CALCRIM 372, a permissive inference of consciousness of guilt, violates neither due process nor equal protection rights.

#### 1. Proceedings Before Trial Court

Both parties requested the inclusion of CALCRIM 372 in the jury instructions. CT 224; CT 229. Petitioner neither objected to the instruction nor requested its modification.

#### 2. Flight Instruction

> If the defendant fled immediately after a crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled then its up to you to decide the meaning and importance of that evidence and that conduct. However, evidence that the defendant fled cannot prove guilt by itself.

RT 871-RT 872.

#### 3. State Court Opinion

As was the case with Petitioner's other jury instruction claims, the Court of Appeal analyzed the substantive basis to determine whether Petitioner forfeited the claim or whether the forfeiture claim was rendered inapplicable by an incorrect statement of law or a violation of Petitioner's substantial rights. The court found that the evidence clearly established that Petitioner fled after shooting Cedano and that the instruction accurately set forth applicable law.[7] Accordingly, it concluded that Petitioner had forfeited the claim.

---

[6] See note 3 above.

[7] The undersigned viewed the Chuck E. Cheese parking lot security tape that the trial court and jury saw multiple times. Although the camera's view of the driver's side of Petitioner's vehicle is blocked by the vehicle itself, the video depicts Petitioner driving from the scene immediately after returning to the driver's side of the vehicle after loading his gun.

### 4. Analysis

Because the state court concluded that Petitioner forfeited this claim, the Court should not consider it.

## VI. Due Process: Admission of Irrelevant Evidence

In his sixth claim, Petitioner contends that his right to due process was violated by the trial court's admission of evidence of his possession of ammunition unrelated to Cedano's shooting.

### A. Evidence of Ammunition

Prior to the opening statements, the Court and counsel discussed the admission into evidence of the .22 caliber handgun used to shoot Cedano, the bullet retrieved from Cedano's body in the course of the autopsy, ammunition seized during a search of Petitioner's home, and ammunition seized during a search of the vehicle from which Petitioner shot Cedano. Defense counsel objected under Cal. Evid. Code § 352 to the introduction of ammunition of various calibers recovered from locations in Petitioner's home other than his bedroom.[8] The Court sustained the objection to evidence of ammunition seized from the other bedroom.

A crime scene technician identified the ammunition found in the vehicle, which included live .22 caliber cartridges in the center counsel and sunglass holder, and larger caliber cartridges found in boxes in the rear cargo area. The technician photographed and collected the .22 caliber cartridges but only photographed the larger cartridges. Petitioner did not object to the testimony.

A second crime scene technician identified evidence from the crime scene and Petitioner's bedroom, including a live .22 long rifle cartridge recovered from the crime scene. A spent casing of a similar .22 long rifle cartridge was recovered from Petitioner's bedroom. Also recovered from the bedroom were a cartridge belt, ammunition boxes, four copper-jacketed bullets, and a shoe box containing a live .22 long rifle cartridge, an expended .22 cartridge, an expended .38 special cartridge, and six expended .44 magnum cartridges. Petitioner did not object to the introduction of this testimony.

///

---

[8] Petitioner lived in his parents' home. Police recovered ammunition from both Petitioner's bedroom and his brother's bedroom.

15

On cross-examination, Petitioner admitted that he owned the .22 caliber handgun with which he shot Cedano and had it in the vehicle's center console on September 26, 2008. Petitioner testified that his father owned the vehicle but allowed Petitioner to use it frequently.[9] He denied owning any firearms other than the .22 caliber handgun or putting any of the ammunition in the car other than the cartridges recovered from the sunglass holder. Petitioner testified that he shot the gun to amuse himself while fishing. When asked why he had a variety of ammunition in his bedroom, Petitioner testified, "I don't know. I just came across it." As to the spent casings, Petitioner testified, "[S]ometimes you find a trash can. Sometimes you don't." The defense only objected, on the basis of relevance, to the prosecutor's next question about whether Petitioner had not yet had time to dispose of the casings.

In his closing argument, the prosecutor referred to Petitioner's readily available .22 caliber ammunition in the sunglass holder and center console of the vehicle. Prior evidence had established that the .22 caliber cartridges were suitable for the handgun with which Petitioner shot Cedano.

**B.     State Court Opinion**

The California Court of Appeal found harmless the references to ammunition other than .22 caliber ammunition of the type with which Cedano was shot:

> The crux of [Petitioner's] argument that he "was prejudiced as a result of the improper introduction of the ammunition" that was not "for the weapon which was a candidate for the weapon used in the offenses" or "part of the mosaic of the crime scene." That evidence, he argues, tended "to show, not that he committed the crime, but only that he" quoting our Supreme Court, was "'the sort of person who carries deadly weapons.'" (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1056.) The prosecutor's argument to the jury, however, which refers exclusively to .22 caliber ammunition in the center console pocket and sunglass holder, refutes Mancilla's argument. So does the evidence that he brought in his car .22 caliber ammunition and the .22 caliber weapon used in the shooting and that he had identical .22 caliber ammunition in his room. Here, as in *Barnwell*, the admission of the evidence at issue, even if erroneous, "was clearly harmless beyond a reasonable doubt." (*Id.* at 1057.)

Lodged Doc. 12 at 4.

---

[9] According to Petitioner, since his father was a truck driver, the vehicle would otherwise not have been used when his father was on the road.

### C. **Erroneous Admission of Evidence**

Issues regarding the admission of evidence are matters of state law, generally outside the purview of a federal habeas court. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). "Although the [U.S. Supreme] Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see *Williams*, 529 U.S. at 375 . . ., it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101.

Since the state appellate court's disposition of Petitioner's appeal was not contrary to or an unreasonable application of Supreme Court precedent, a federal district court may not grant the writ based on the trial court's admission of the evidence of unrelated ammunition in Petitioner's car and home.

### VII. **Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

    (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

     (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

     (B) the final order in a proceeding under section 2255.

    (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

    (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

**VIII.** **Conclusion and Recommendation**

The undersigned recommends that the Court dismiss the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file

written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections.  The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **May 16, 2016**                                  /s/ *Sheila K. Oberto*
                                                             UNITED STATES MAGISTRATE JUDGE